JOHN S. WOOLLACOTT

*v.*

THE CITY OF CHICAGO.

*Opinion filed October 19, 1900.*

1. EMINENT DOMAIN—*proviso to section 53 of article 9 of the City and Village act construed.* The proviso to section 53 of article 9 of the City and Village act, as amended in 1891, (Laws of 1891, p. 80,) providing that if, after two years from the date of a condemnation judgment, the court, upon motion of a party interested in the lands, finds that the city has taken possession without paying for the land, it may order the city to make payment within a short day, and in default thereof may award interest on the judgment and direct the issue of a writ of possession, does not authorize the allowance of interest unless the party is also entitled to possession.

2. DEDICATION—*statutory dedication passes title to city as effectively as a deed.* If a plat is executed, acknowledged and recorded in conformity with the provisions of the statute, it will operate as effectually as a deed to convey the title to the streets mentioned therein to the municipality.

3. SAME—*effect of making plat after city has condemned property.* A property owner is bound to know the law that a city may dismiss condemnation proceedings and vacate the judgments, and hence, if, after filing a petition to dismiss condemnation proceedings, he makes, acknowledges and records a plat showing the territory included in the condemnation judgment as a street and sells lots with reference to such plat, he is estopped to deny his intention to dedicate the land as a street after the city dismisses the condemnation proceeding,—and particularly where, after the recording of the plat and the dismissal of the proceeding, the city improves the street by paving and curbing it.

APPEAL from the Superior Court of Cook county; the Hon. JONAS HUTCHINSON, Judge, presiding.

This is a proceeding, stated by counsel to be under section 53, as amended in 1891, of article 9 of the City and Village act of 1872. The proceeding was begun by petition, filed on March 24, 1900, *nunc pro tunc* as of March 8, 1899, setting forth the condemnation and supplemental assessment proceedings hereinafter mentioned; and also

setting up the repealing of the ordinance of condemna-
tion, and the vacation of the judgment of condemnation
and of the judgment affirming the special assessment,
and the dismissing of the petitions therein; and also set-
ting up, that the city has assumed the control and use
of the property condemned without paying compensa-
tion or damage therefor; and praying that a judgment
be entered in accordance with the terms of the statute in
such cases made and provided, awarding interest on the
amount of said judgment from the date of taking posses-
sion of said property by the city, and further directing
the issuance of a writ of possession for said property in
favor of the petitioner.

On March 24, 1900, the court rendered a judgment,
finding the issues for the respondent, the city of Chicago,
and directing that the city recover of the appellant its
costs and charges and have execution therefor, to which
the appellant excepted.    The present appeal is prose-
cuted from the judgment entered, or finding made, on
March 24, 1900, as aforesaid.

The facts are substantially as follows: On November
15, 1886, the board of trustees of the town of Lake View
passed an ordinance for opening and extending Lake
View avenue from the south line of St. James place to
the north line of Fullerton avenue, the avenue as opened
and extended to be of the width of fifty feet, and the east
line thereof to be the east line of the south-west quarter
of section 28, township 40 north, range 14, east of the
third principal meridian.  On November 22, 1886, the town
of Lake View filed in the superior court of Cook county
its petition for the ascertainment of just compensation
to be awarded to the owner or owners of property to be
taken or damaged for the opening and extending of Lake
View avenue as aforesaid.   Among the property to be
taken for said improvement, and described in said peti-
tion, was a strip of land fifty feet in width off the easterly
line of lot 4 and off the south twenty-seven and one-half

feet in width of lot 3, all in assessor's division of lot 4 of Wrightwood, being a subdivision of said south-west quarter. At that time William C. Goudy was the owner of the strip of land fifty feet in width as above described. On November 2, 1887, the jury returned a verdict awarding to the owner of said strip $5000.00. On January 7, 1888, judgment of condemnation for $5000.00 was rendered upon the verdict. At that time William C. Goudy was the owner of the whole of said lot 4 and of the south twenty-seven and one-half feet of said lot 3. At that time, also, David Goodwillie, or his wife, Cecelia Goodwillie, was the owner of lot 2 in said assessor's division, and of said lot 3, except said strip of land twenty-seven and one-half feet in width off the southerly side of said lot 3.

A supplemental petition was filed under said section 53, praying that an assessment be made for the purpose of raising the amount necessary to pay the compensation and damages awarded for the property taken or damaged. In this supplemental proceeding the commissioners filed their assessment roll on January 21, 1888, and reported that lot 4 and the south twenty-seven and one-half feet of lot 3, except the east fifty feet thereof, was specially benefited in the sum of $4628.75, being only $371.25 less than the condemnation judgment. December 3, 1888, the said assessment roll and report were confirmed. Goodwillie and Goudy filed objections to the confirmation of the assessment, and took an appeal to this court from the judgment confirming the same. This appeal was finally disposed of on March 30, 1891, as may be seen by reference to the case of *Goodwillie* v. *City of Lake View*, 137 Ill. 51. After the filing of the original petition, the city of Lake View was substituted for the town of Lake View; and thereafter on June 29, 1889, the city of Lake View became annexed to the city of Chicago, and the city of Chicago entered its appearance in said proceeding, and assumed the direction and control of the proceedings of condemnation and supplemental assessment.

Said lots 2, 3 and 4 are long lots, running east and west and extending eastward from North Clark street to Lincoln park.

While the appeal from the judgment of confirmation was pending, Goudy and Goodwillie made a new subdivision of said lots 2, 3 and 4, known as Goudy & Goodwillie's subdivision of lots 2, 3 and 4 in assessor's division of lot 4, etc. By this subdivision a street, called Roslyn place, was made to run east and west and north of the property owned by Goudy; and said lot 4 and the south twenty-seven and one-half feet of said lot 3, so as aforesaid owned by him, were subdivided into lots numbered from 18 to 33 inclusive. Of these lots, lots numbered from 18 to 30 inclusive ran north and south and fronted on Roslyn place, while lots numbered from 31 to 33 inclusive ran east and west and fronted on Clark street. In this subdivision lot 18 was the most easterly lot, and embraced the strip of land fifty feet wide mentioned in the condemnation judgment for $5000.00.

On November 6, 1890, Goudy and wife deeded to appellant, John S. Woollacott, for an expressed consideration of $75,000.00, said lots from 18 to 33 inclusive of Goudy & Goodwillie's subdivision above named. This deed contains the following recital: "The covenants in this deed shall not apply to the west fifty feet of said lots 31, 32 and 33, and also proceedings for condemnation of said lot 18, and a special assessment for opening and extending Lake View avenue."

On March 19, 1892, appellant and Goodwillie filed a petition in the original suit above described, under section 53 of article 9, of the City and Village act as amended in 1891, and therein described the proceedings for the opening and extending of Lake View avenue to the uniform width of fifty feet from the south line of St. James place to the north line of Fullerton avenue, as above set forth. Said petition so filed on March 19, 1892, stated

that, although more than two years had elapsed since the entry of judgment in said proceeding, yet that no part of the lands of Goudy and Goodwillie, or of any of them, had been taken or damaged for said improvement or otherwise, and that no part of the several sums awarded to be paid for said lands had been paid for them, or for any part thereof; and the petition prayed, that the court would enter an order that the city of Chicago should pay for said lands, so proposed and ordered to be taken, the said sums awarded therefor in said judgment within a short day to be fixed by the court, not later than twenty days from the date of entering of such order, and that, in default thereof, the proceedings be dismissed, so far as the same related to the lands of petitioners, appellant· Woollacott, and said Goodwillie. The city of Chicago filed an answer to said petition of Woollacott and Goodwillie and stated in said answer, that the delay in the prosecution of the proceeding, if any, had been caused by Goudy and Goodwillie, who filed objections to the assessment, and took an appeal to the Supreme Court of the State, which was not finally disposed of until March 30, 1891, and that the order of the Supreme Court, affirming the judgment of confirmation, was not filed in the superior court until July 6, 1891. The answer averred, that the assessment roll had been certified by the clerk of the court to the city collector of Chicago, who was proceeding to collect the same. The answer also averred that the total amount of the judgment of the superior court was $30,541.00, and that the total assessment against the property of Goudy and Goodwillie was $11,638.00, and that the assessment roll would be fully collected in due process of law on or before the first day of November.

Some testimony was introduced in the present proceeding, tending to show that, on March 19, 1892, the same day on which the petition of appellant and Goodwillie was filed, the city of Chicago laid a water pipe in said strip of land fifty feet wide off the easterly line of

said lot 4 and the south twenty-seven and one-half feet in width of said lot 3, designated on Goudy & Goodwillie's subdivision as lot 18.

On October 29, 1892, while the petition of March 19, 1892, of appellant and Goodwillie was pending, the appellant Woollacott made and recorded a re-subdivision of lots 18, 19, 20 and the east thirty feet of lot 21 in Goudy & Goodwillie's subdivison of said lots 2, 3 and 4 and re-platted the same, naming lot 18 upon said plat as "Lake View (boulevard) avenue," fifty feet wide; and the balance of said subdivision was platted as lots 1, 2, 3 and 4 running east and west and fronting on Lake View avenue as a street, and lots 5, 6 and 7 running north and south and fronting north on Roslyn place as a street, a private alley being designated upon the plat as running north and south between lot 5 and the rear or west ends of lots 1, 2, 3 and 4.

The answer of the appellee, the city of Chicago, to the present petition filed by appellant contains the following averment: "The respondent says that the making of said plat by said Woollacott was and is a voluntary dedication of said lot 18 to the public, and to the city of Chicago, and to the persons to whom he subsequently sold and conveyed the said lots 1 to 7 inclusive."

On May 1, 1893, the appellant sold to Alice D. Foster said lot 3 in Woollacott's re-subdivision above described, which fronts on said lot 18, marked on the plat as "Lake View avenue." Upon lot 3 so sold to Alice D. Foster there has been constructed a brick and marble residence. On or about May 1, 1893, appellant constructed buildings on lots 1, 2 and 4 and lots 5, 6 and 7 in said re-subdivision aforesaid, lots 1, 2 and 4 fronting on said lot 18 designated on the plat as "Lake View avenue." In 1894 appellant conveyed lots 1, 2 and 4, fronting on Lake View avenue, and lots 5, 6 and 7 fronting on Roslyn place to the Commercial National Bank of Chicago, or its cashier, John B. Meyer. This quit-claim deed to Meyer was exe-

cuted as a mortgage security, and was foreclosed, and
the master's deed executed to the bank in September,
1896, followed by a deed executed to the bank by the
appellant himself on March 20, 1897.

On November 27, 1893, the city passed an ordinance
for the erection of lamp-posts on Lake View avenue from
Roslyn place south of Arlington place, to be so erected
under the superintendence of the department of public
works.

On February 14, 1894, the city council of Chicago re-
pealed the ordinance of November 15, 1886, for the open-
ing and extension of Lake View avenue to the uniform
width of fifty feet from the south line of St. James place
to the north line of Fullerton avenue. On February 28, ·
1894, upon motion of the city attorney, an order was
entered that the judgment of condemnation, entered on
January 7, 1888, and all other judgments, rendered in
said original proceeding, be and were thereby vacated
and set aside, and the assessment roll filed therein an-
nulled, and the petition dismissed, and the cause stricken
from the docket of the court.

On May 4, 1896, the city council of Chicago passed an
ordinance for paving and curbing the roadway of Lake
View avenue from the south line of Roslyn place to a
point one hundred and seventy-three feet south of the
south line of Arlington place. Lake View avenue was
paved and curbed by the city in accordance with said
ordinance. Previously to the middle of November, 1898,
the Commercial National Bank had sold and conveyed
the lots and buildings, so deeded to it by appellant, to
other persons. When appellant began to construct the
houses fronting on what was lot 18 in Goudy & Goodwil-
lie's subdivision, and what was marked as "Lake View
avenue" on the plat of appellant's re-subdivision, appel-
lant appropriated from six to eight feet of the west side
of said lot 18 for sidewalks for the houses so fronting
on lot 18,

HAMLIN & BOYDEN, and JAMES J. BARBOUR, for appellant.

CHARLES M. WALKER, Corporation Counsel, and THOS. J. SUTHERLAND, for appellee.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The proviso to section 53 of article 9 of the City and Village act, passed as an amendment in 1891, is as follows: "*Provided, however*, in all proceedings heretofore commenced, where the property has not been fully paid for, or that shall hereafter be commenced, said city or village shall take and pay for the lands sought to be taken or damaged within two years of the entry of judgment in such condemnation proceedings. And after the expiration of such time the court in which the proceedings may have been had, upon a motion of any person interested in the lands, may inquire in a summary manner whether the lands in which such person is interested have been taken or damaged and paid for; and if the court finds that such lands have not been taken or damaged and not been paid for, it shall enter an order requiring the city or village to pay for such lands within a short day, to be fixed by the court; and in default thereof shall dismiss such proceedings as far as they relate to lands of such person. If, however, the court finds that such city or village has taken possession of the land and has not paid therefor, it shall enter an order requiring such city or village to pay the amount of the condemnation judgment, with interest from the time of such taking, within a short day to be fixed by the court; and in default thereof, to dismiss the proceedings and enter a several judgment in favor of such land owners for interest from the day of such taking, and direct the issue of a writ of possession in favor of the several owners or their legal representatives or grantees, re-

spectively. And such dismissal as aforesaid shall operate as a bar to further proceedings under such ordinance against the land affected by such dismissal. And every such cause shall be considered as pending in the court in which the same has been, or shall be commenced, until all the lands sought to be taken are paid for, or until the proceedings are dismissed where the lands have not been taken." (1 Starr & Cur. Ann. Ill. Stat.—2d ed.—p. 779).

The proviso above quoted provides for the making of a motion by any person interested in the land. In this case, appellant did not make a motion, as specified in the proviso to section 53, but filed a regular petition in the condemnation and assessment proceeding, to which petition, appellee, the city of Chicago, filed an answer. Upon the petition of appellant, so filed *nunc pro tunc* as of March 8, 1899, and the answer of appellee thereto, an issue was made, testimony was taken before the court, and propositions of law were submitted to the court. We deem it unnecessary to decide, whether, under a statute which provides for the making of a motion by a person interested in the property involved, and confers upon the court, before whom the motion is made, the power to make an inquiry in a summary manner, parties may proceed to file a petition and answer, and take testimony, and try an issue thus formed, as though an original case was pending in court. The statute evidently contemplated nothing but the making of a mere motion to be disposed of by the court in a summary manner. As, however, both parties have in this proceeding presented the matter as an issue formed upon pleadings, and proofs taken, and propositions of law submitted, we will consider the points involved without reference to the propriety of the course pursued.

The petition, filed by the appellant upon March 24, 1900, *nunc pro tunc* as of March 8, 1899, prays for a judgment, awarding interest upon the amount of the judgment of condemnation for $5000.00 from the date of the

alleged taking possession of the property sought to be condemned by the city, and also directing the issuance of a writ of possession for said property in favor of appellant. It is impossible to see how the prayer of this petition could have been granted by the court below. The statute not only provides for a judgment in favor of the land owner for interest from the date of taking possession, but it also provides for the issuance of a writ of possession in favor of the several owners, or their legal representatives, or grantees, respectively. The property, which the appellant asks to be put in possession of through a writ of possession, is a part of Lake View avenue, a public street of the city of Chicago. It is the same property, which was lot 18 in Goudy & Goodwillie's subdivision, and which, in the original condemnation proceeding, is described as a strip of land fifty feet wide off the easterly side of lot 4 and off the south twenty-seven and one-half feet in width of lot 3 in assessor's division of lot 4 of Wrightwood. Lots 1, 2, 3 and 4 of appellant's re-subdivision, which are parts of lots 19 and 20 of Goudy & Goodwillie's subdivision, front, with the buildings erected thereon, upon this portion of Lake View avenue, formerly designated as lot 18. Lots 1, 2, 3 and 4, with the buildings thereon, which thus front upon this portion of Lake View avenue, are not now owned by the appellant, but by grantees from the appellant. These grantees are not parties to this proceeding. The appellant could not hold the portion of Lake View avenue, upon which these lots and buildings front, as against his grantees, the owners thereof, because he sold the lots and buildings to them with the understanding that their property was to face upon this street. They thereby became vested with an easement in the street for the purposes of ingress to and egress from their property. The court below could not ignore the rights of these grantees, and make an order, which should put the appellant in possession of the street in front of their prop-

187—33

erty. Appellant, not being entitled to the possession of the strip of land known as lot 18, is not entitled to interest on the judgment. The two, interest on the judgment and possession of the property, go together under the statute; and there is no authority for awarding interest money where possession does not go with it.

Appellant on October 29, 1892, made a re-subdivision of lots 19, 20 and the east thirty feet of lot 21 of Goudy & Goodwillie's subdivision, and platted the same, and marked upon said plat what had formerly been lot 18 as "Lake View avenue," and recorded the plat. It is not denied in this case that the plat of this re-subdivision was made, acknowledged and recorded in strict compliance with the requirements of the statute. This being so, there was a statutory dedication to the city of Chicago of the property now in controversy, being that portion of Lake View auenue on which lots 1, 2, 3 and 4 of appellant's re-subdivision front.

Section 3 of chapter 109 of the Revised Statutes in regard to "Plats" provides, that "the acknowledgment and recording of such plat shall be held in law and in equity to be a conveyance in fee simple of such portions of the premises platted as are marked or noted on such plat as donated or granted to the public. * * * And the premises intended for any street, alley, way, common or other public use in any city, village or town, or addi-tion thereto, shall be held in the corporate name thereof in trust to and for the uses and purposes set forth or intended." (3 Starr & Cur. Ann. Stat.—2d ed.—p. 2966). This court has held in a number of cases that, where a plat is executed, acknowledged and recorded in conformity with the provisions of the statute, it will operate as effectually, as a deed would operate, to convey the title of the streets therein mentioned to the municipality. (*Village of Princeville* v. *Auten,* 77 Ill. 325; *Maywood Co.* v. *Village of Maywood,* 118 id. 61; *Rees* v. *City of Chicago,* 38 id. 322; *Canal Trustees* v. *Haven,* 11 id. 554; *Gebhardt* v. *Reeves,* 75 id. 301.)

Appellant contends, however, that dedication is a question of intention, and that he did not intend to make a dedication of the strip in question to the public. Counsel for appellant in their brief enumerate certain circumstances which, as they claim, show an intention not to make a dedication. The circumstance, which is mainly relied upon in support of this position, is the fact that the city had commenced a condemnation proceeding, had obtained a judgment for the condemnation of the strip in question, had assessed the balance of the property from which the street was to be taken for benefits derived from the improvement, and had filed an answer to the petition of March 19, 1892, saying that such assessment would be collected. Appellant insists, that he was entitled to rely upon the condemnation of the property by the city for a street, and that, therefore, his making, acknowledging and recording the plat of his re-subdivision did not indicate an intention to dedicate the strip in question, but merely an intention to prepare for and take advantage of the proposed action of the city in the condemnation proceeding. Under the law the city had a right to dismiss its proceeding, and vacate the judgment, and appellant was bound to know the law in this respect. He filed a petition on March 19, 1892, reciting that the city had not taken possession of the strip in question, and asking that the city be required to pay the sum awarded for the strip within a short day to be fixed by the court, and that, in default of such payment, the proceeding should be dismissed, so far as the same related to the appellant's lands. It thus appears, that in March, 1892, the appellant himself asked for a dismissal of the petition in case of failure to pay the amount of the award within a short time. After filing his petition on March 19, 1892, appellant took no further steps therein, nor, so far as the record shows, ever called the matter to the attention of the court. He never obtained from the court an order, that the city be required to pay the award with-

in a fixed time. The laying of the water pipe in the strip in question took place on March 19, 1892, the very day on which appellant filed his petition. He did not frame the petition upon the theory that the city was in possession of the property, but upon the theory that the city had not taken possession. The construction of the water pipe would not make the city "liable to an amount found as the value of the premises for purposes of a street." (*Pearce* v. *City of Chicago*, 176 Ill. 152). If the laying of the water pipe, however, was an act of possession, appellant must have had notice of it at the time of the filing of his petition, or shortly thereafter; but he made no motion to amend the petition, and to allege the fact that possession had been taken of the strip, and that he was entitled to a writ of possession. On the contrary, the proceeding begun on March 19, 1892, was allowed to drag along without any action whatever on the part of the appellant, until the city itself in February, 1894, repealed the ordinance, vacated the judgment, annulled the assessment, and dismissed the petition. This dismissal of the proceeding was the very result, for which the appellant prayed in his petition of March 19, 1892. He took no further proceedings towards the enforcement of the judgment, or the obtaining of possession, until after a lapse of more than five years after February, 1894, when the city dismissed the proceeding, to-wit, until March 8, 1899, when he filed the present petition under section 53 as amended.

When appellant made and recorded the plat of his re-subdivision on October 29, 1892, it may as well be presumed that he did so in reference to the future dismissal of the condemnation and assessment proceeding, as that he did so in reference to any expected consummation of that proceeding by the city. When the condemnation and assessment proceeding was dismissed and ended, the city had no right to take possession of the strip in question, except by virtue of the dedication which he made

by the filing and recording of his plat. (*City of Chicago* v. *Hayward*, 176 Ill. 130).

It is true that dedication is a question of intention, though this rule applies more particularly to common law dedications (*City of Chicago* v. *Stinson*, 124 Ill. 510; *Town of Lake View* v. *LeBahn*, 120 id. 92) than to statutory dedications, where the execution and recording of the plat in conformity to the statute vest the title to the streets, or other public property, in the municipality, just as a deed would vest it; we do not, however, hold that the question of intention has no application to the filing and recording of statutory plats.   It may be conceded for the purposes of this case, that the question of intention applies as well to dedication by statutory plats, as to dedications at common law; and yet it is settled law, that the acts and declarations of an owner of property may be such, as to equitably estop him from denying an intention to dedicate. (*Waggeman* v. *Village of North Peoria*, 155 Ill. 545; *City of Ottawa* v. *Yentzer*, 160 id. 509). We think that the facts and circumstances, developed in this case, are of such a character, as to estop the appellant from denying an intention to dedicate this strip of land to the public for a street.

Where an owner of land plats it, and sells lots bounded by streets, designated upon the plat as streets, he thereby indicates a clear intention to dedicate. (Angell on Highways,—2d ed.—sec. 142; 9 Am. & Eng. Ency. of Law, —2d ed.—p. 34).   Where an owner has made a plat, and sold parts of the land platted with express reference to the plat, it will be presumed that he intended to dedicate the parts, designated for public uses, to such public uses. The dedication, evidenced by the filing or recording of a plat, becomes complete when lots have been sold with reference to the plat, and the public has accepted the dedication either expressly or by user.   (9 Am. & Eng. Ency. of Law,—2d ed.—pp. 41-60, inclusive).   The owner is estopped to deny dedication where private rights have

intervened. (*Littler* v. *City of Lincoln*, 106 Ill. 353). Where lots are sold according to the plat, the purchasers of lots acquire the right to have the streets, delineated upon the plat, kept open. (9 Am. & Eng. Ency. of Law,—2d ed.— p. 57; *Field* v. *Barling*, 149 Ill. 556). The act of the owner in platting, etc., is in the nature of a mere offer to the municipality, and the municipality cannot be bound to open or to improve the streets, designated upon the plat, until there is an acceptance by such municipality. (*Littler* v. *City of Lincoln, supra; Hamilton* v. *Chicago, Burlington and Quincy Railroad Co.* 124 Ill. 235; *Woodburn* v. *Town of Sterling*, 184 id. 208).

An application of the principles, announced in the authorities above referred to, to the case at bar makes it clear, that appellant is here precluded and estopped from denying an intention to dedicate. This estoppel not only here operates in favor of the private owners, to whom he has sold property abutting upon the street in question, but it also operates in favor of the city of Chicago by reason of its acts of acceptance. The appellant so platted his lots as to make them front upon the street in question, and then built buildings upon his lots, and sold the lots and buildings to third persons. He also built sidewalks in front of the houses and lots so sold, and upon the strip of ground in question. These acts on his part in connection with the execution and recording of the plat in question, estop him from denying an intention to dedicate. The proof shows that in November, 1893, the city passed an ordinance for the erection of lamp-posts upon the strip in question, and in May, 1896, passed an ordinance for paving and curbing the street in question, and did so curb and pave it in accordance with the ordinance. These acts on the part of the city, performed as they were after appellant had recorded the plat of his re-subdivision, indicate an acceptance of the street thereon designated as "Lake View avenue." The testimony tends to show, that such acts on the part of the

city were not done for the purpose of taking possession under the condemnation judgment, because the condemnation proceeding was vacated and dismissed. Without a condemnation the city had no right to take possession, but would have been a mere trespasser. (*City of Chicago* v. *Hayward*, 176 Ill. 130; *Pearce* v. *City of Chicago*, 176 id. 152). The acts, which appellant interprets as a taking of possession by the city under the condemnation judgment, are rather to be regarded as acts of acceptance by the city of the offered dedication indicated by the plat. The appellant might have had a right to withdraw the offer of dedication made by the filing and recording of his plat, but he attempted no such withdrawal, until after the intervening of private rights, and the acceptance of the city.

We are of the opinion that the court below committed no error in refusing to enter an order in favor of the appellant for interest upon the amount of the condemnation judgment and for a writ of possession to put him in possession of the strip in question. Accordingly, the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*